UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
ALFONSO LOVE-EL,                )
                                )
            Petitioner,         )
                                )
      v.                        )   Civil Action No. 11-1186 (ABJ)
                                )
ISAAC JOHNSTON,                 )
                                )
            Respondent.         )
_____ )

**MEMORANDUM OPINION**

Petitioner Alfonso Love-El brings this action to challenge his return to custody upon the execution of a parole violator warrant on March 28, 2011. Based on review of his petition for a writ of habeas corpus and the government's opposition, the Court will deny the petition.

I. BACKGROUND

In the Superior Court of the District of Columbia, petitioner was convicted of distribution of cocaine and was sentenced to a term of seven to 21 years' imprisonment. United States' Opp'n to Pet'r's Pet. for a Writ of Habeas Corpus ("Resp't Opp'n"), Ex. 2 (Amended Judgment and Commitment Order, No. F-12021-91B (D.C. Super. Ct. Apr. 27, 1994). Petitioner first was released on parole on October 10, 2000, *id.*, Ex. 3 (Certificate of Parole), and over the years has had his parole revoked on three occasions. *See id.*, Exs. 5, 9 and 14 (respectively, Notices of Action dated May 5, 2004, September 21, 2005, and May 7, 2007).[1] His most recent parole

---

[1] During this period, petitioner was arrested for and convicted of distribution of heroin, and the Superior Court sentenced him to a term of 30 months' incarceration to run concurrently with

release occurred on September 14, 2009, and he was to remain under supervision through August 6, 2017. *Id.*, Ex. 16 (Certificate of Parole). He was returned to custody on March 2, 2011 upon the execution of a parole violator warrant issued by the United States Parole Commission ("USPC") on February 3, 2011. *See id.*, Ex. 19 (Warrant and Warrant Application).

Petitioner was charged with failure to submit to drug testing on 12 occasions, use of dangerous and habit forming drugs, and failure to report to his supervising officer as directed on two occasions. Resp't Opp'n, Ex. 19 (Warrant Application dated February 3, 2011) at 2. On March 4, 2011, a hearing examiner conducted a probable cause hearing and found probable cause to believe that petitioner had committed the acts charged. *See id.*, Ex. 20 (D.C. Probable Cause Hearing Digest dated March 4, 2011) at 2-3. No parole revocation hearing was scheduled at that time, however, because petitioner applied for a placement in a residential substance abuse treatment ("RSAT") program. *See id.*, Ex. 20 at 6. In relevant part, the RSAT application stated:

> WAIVER OF A PROMPT REVOCATION HEARING: I understand that I cannot participate in RSAT unless I waive my right to a prompt revocation hearing to resolve the violation charge(s) against me . . . . By signing this application, I am waiving my right to a revocation hearing within sixty (60) days of the probable cause finding. If this application is not approved by the [USPC] or I am not accepted for placement in RSAT despite the [USPC's] approval, the [USPC] will consider my waiver of a prompt revocation hearing to be void. As noted earlier, I understand that if I am accepted into RSAT and unsuccessfully discharged from the program, the revocation hearing may be scheduled beyond the normal sixty (60) day period, but no later than 21 days from the date the [USPC] received notice of my unsuccessful discharge.

---

any other sentence and followed by a five-year term of supervised release. *See* Resp't Opp'n, Ex. 13 (Supplement to Warrant Application dated March 30, 2007) and 15 (Judgment and Commitment Order, *United States v. Love-El*, No. 06 CF2 24935 (D.C. Super. Ct. Nov. 15, 2007).

*Id.*, Ex. 20A (Application for Placement in the Residential Substance Abuse Treatment Program) (emphasis removed). Petitioner, who was represented by counsel at the time, signed the application of March 4, 2011. *Id.*, Ex. 20A. Parole revocation proceedings were then suspended pending petitioner's participation in the RSAT program. *Id.*, Ex. 21 (Memorandum from S.T. Nasko, Case Analyst, to Commissioner, USPC, dated March 21, 2011) at 1.

Later that month, petitioner's mother died, and at the family's request, the USPC authorized his release to attend the funeral. *See* Resp't Opp'n, Ex. 21. On March 21, 2011, petitioner was released from custody pursuant to the February 3, 2011 warrant and was reinstated to supervision. *Id.*, Ex. 22 (Notice of Action dated March 21, 2011). The Notice of Action directed petitioner to report to his supervision officer immediately upon his release, *see id.*, Ex. 22, and it did not specify that he was to return to custody thereafter. *Id.* Instead, USPC planned to handle the matter by reinstating petitioner for the purpose of attending the funeral on March 24, and then re-issuing a warrant the following day to return him to custody. Ex. 21 at 2.

A USPC case analyst prepared a second warrant application on March 24, 2011, which listed the same alleged violations of the terms of petitioner's parole as were listed in the February 3, 2011 application. *See* Resp't Opp'n, Ex. 23 (Warrant Application dated March 24, 2011) at 2. The warrant was executed on March 28, 2011, *id.* (Warrant), and a second probable cause hearing took place on April 5, 2011. *Id.*, Ex. 24 (D.C. Probable Cause Hearing Digest dated April 5, 2011) at 1. The hearing examiner found probable cause to believe that petitioner committed the charged offenses, and noted petitioner's eligibility for the RSAT program. *Id.*, Ex. 24 at 6. Petitioner, who again was represented by counsel, signed a second RSAT application on April 5, 2011, and this application also provided that he waive his right to a parole revocation hearing. *Id.*, Ex. 25 (Application for Placement in the Residential Substance Abuse

3

Treatment Program). The USPC held petitioner in custody, approved his RSAT placement, and postponed further revocation proceedings so that he could "participate and successfully complete the secure portion of the treatment program." *Id.*, Ex. 26 (Notice of Action dated April 27, 2011).[2]

According to petitioner, the USPC erred by re-issuing the second "warrant citing the same violation[s] . . . that had already been disposed of in a previous proceeding." Pet. at 6. He believed that he had been reinstated to supervision in March 2011 and had no obligation to return to custody on his own. Through counsel, petitioner requested reconsideration of the decision, arguing that the USPC violated his right to due process by (1) issuing a second warrant based on "the exact same violations as the first warrant," and by having him arrested twice for "the exact same alleged violations." *Id.*, Attach. (Letter to Isaac Fulwood, Chairman, USPC, from S.B. Brebbia, Staff Attorney, Public Defender Service for the District of Columbia, dated May 20, 2011) at 2. The request was denied. Resp't Opp'n, Ex. 29 (Letter from S.J. Husk, Case Operations Administrator, USPC, to S. Brebbia dated June 7, 2011).

## II. DISCUSSION

Petitioner contends that the March 24, 2011 parole violator warrant was invalid. *See* Pet. at 6. Citing *Maslauskas v. U.S. Bd. of Parole*, 639 F.2d 935 (3d Cir. 1980), petitioner contends that the USPC "may not issue a warrant for a violation that has already been disposed of in a previous proceeding." Additional Resp. to Resp't's Opp'n to Pet'r's Writ of Habeas Corpus at 1. His reliance is misplaced. In *Maslauskas*, the Board of Parole issued a violator warrant, decided not to revoke parole, issued a second violator warrant based on the same alleged violations and

---

[2] Petitioner has notified the Court of his "release from the . . . RSAT Program and transfer[] to Second Genesis" for further treatment. ECF No. 13.

had the warrant lodged as a detainer. *See Maslauskas*, 639 F.2d at 936-38. The Third Circuit found that the Board had no authority to issue the second violator warrant because it already had rendered a decision not to revoke parole for the underlying violations. *Id.* at 938.

The *Maslauskas* scenario is not present in this case. At no time did the USPC actually revoke parole or otherwise conclude parole proceedings based on the alleged violations underlying the first warrant. Instead, revocation proceedings were suspended pending petitioner's completion of the RSAT program. Pursuant to the terms of the RSAT application, parole revocation proceedings would resume if petitioner's RSAT application was denied, if he was unsuccessfully discharged from the RSAT program, or if he rescinded his waiver of a final revocation hearing, *see* Resp't Opp'n, Ex. 20A at 1, and none of these events occurred.

Even if petitioner had not waived his right to a prompt revocation hearing, nothing in the record suggests that the March 24, 2011 parole violator warrant -- which may have been redundant -- was invalid. Petitioner's parole term does not expire until August 6, 2017, and he has been subject to USPC supervision at all times relevant to this action. No prior USPC action estopped the issuance of a second parole violator warrant, *see Turner v. U.S. Parole Comm'n*, 934 F.2d 254, 260 (10th Cir. 1991) (finding that, where the USPC "never concluded the first hearing" and instead "reserved a final determination on revocation until after the state trial[,] . . . there was no final judgment at the first hearing and the panel's refusal to revoke parole did not collaterally estop a future hearing on the same alleged acts."), and double jeopardy does not apply in the context of parole proceedings. *See Garcia v. United States*, 769 F.2d 697, 699 (11th Cir. 1985) (concluding that imposition of special parole term in addition to three-year prison term does not violate the double jeopardy clause); *Jones v. United States*, 669 A.2d 724, 727 (D.C. 1995) ("Indeed, this court has noted that jeopardy does not attach in parole, probation, or

bond revocation hearings, because these proceedings are not designed to punish a defendant for violation of a criminal law.") (internal quotation marks and citation omitted).  Other than the arrest itself, the record does not reflect that petitioner has suffered adverse consequences as a result of the manner in which the USPC chose to proceed: revocation proceedings have been suspended once again so that he can participate in the RSAT program.

III. CONCLUSION

At bottom, petitioner is in exactly the same place he would have been had he not been released to be with his family for the funeral. He has failed to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and, accordingly, his petition for a writ of habeas corpus will be denied.  An Order accompanies this Memorandum Opinion.


AMY BERMAN JACKSON
United States District Judge

DATE:  October 5, 2011